May it please the Court, I would like to reserve three minutes. Counsel, please be advised that the time shown on the clock is your total time remaining. Yes, Your Honor. Leading up to the class period. Could you introduce yourself for the record? Brian Alexander for the appellate. Leading up to the class period, federal and California employment regulators in quick succession employed rarely used mechanisms reserved for serious systemic misconduct to open sexual harassment and discrimination investigations into Activision. Activision did not disclose these investigations. Instead, for more than two years, they reassured investors by stating in all of their public filings that all undisclosed investigations that they were a party to were routine. Now, one incident of sexual harassment may be arguably routine. For a large company, maybe multiple incidents. But two government investigations into systemic misconduct are not routine, particularly given what was going on at Activision. As the district court found, the complaint pleads a toxic work environment where reprehensible conduct was tolerated. Accordingly, there's no way these investigations could be accurately described as routine. Further, there were other reasons, in addition to the mechanisms and the underlying misconduct at Activision, that they were not routine. Just stopping on the mechanisms for a minute, can you point me to where in the complaint you make an allegation that Activision would have known that, or knew that director's complaints or commissioner's charges were rarely used? Where is that alleged? Well, it does say, there's no specific allegation in the complaint that they knew they were rarely used. But Activision is a very sophisticated company, and with high-powered lawyers. In fact, they hired Paul Hastings to start a parallel investigation that's used to obstruct the DSEA.  Well, even if it could be conceived of that way, it really still goes to the question of whether these investigations were routine or not. So the DFBH, in its complaint, called it obstruction. But even if you refer to it as... Do you have any allegation as to how many investigations of what sort Activision was subject to? That is, yes, in their face this might seem, but when their alleged misstatement says, we're subject to investigations, it mentions employment law, it mentions several other things. For example, if you alleged, well, this is the only thing they'd ever been investigated for. That might make it seem less routine. But I would think a company of this sort has everything from OSHA to regular compensation, wage and hour, whatever. Is there any knowledge about that in the complaint? Well, there's no way for us to know how many undisclosed investigations that Activision is subject to. Well, you have a lot of confidential witnesses. Right, but the question here is, would a reasonable investor consider these investigations routine? And the complaint alleges that given particularly what was going on in the MeToo movement, given the statements that Activision made about the importance of diversity and inclusion, they touted that they were a top 100 company to work for and how they relied on their people. A reasonable investor in Activision would think that these particular investigations weren't routine because of the potential damage, weren't routine because of the explosive nature of the allegations. The allegations that ultimately came out when the complaints were filed, your lawsuit, I take it, says that these were lies from day one, reading it, but the two-year investigation, which at the beginning certainly seemed to me routine, do you have an argument based on this is the time when they really should have known, when investors should have been they were lying from the beginning? We think they were lying from the beginning because, your honor, because of the fact that, because of the mechanisms, because of what was going on in terms of the MeToo movement, because they immediately also made pretty significant changes to human resources and they started the investigation very quickly. So and they informed the board of directors about this and for a large company we, I'd also argue that. Informing the board of directors, does that only come from the Wall Street Journal article and statement like six months after the corrective and it doesn't say, as I read it, correct me if I'm wrong, it says they were informed of all investigations. It didn't say we were informed on this day of this investigation. I read it as a CYA, oh we're informed of everything, we're the board. Oh, the article, it's definitely in context of, it's definitely. Is that the only basis for your statement that the board was informed? That's the basis, but that is the statement. That's fine. Okay, I'm done. And just to continue on Judge Boggs' question, there are some significant things that happened also further into the class period that made the investigation even less routine, such as the restructuring of human resources so that it reported to corporate. And there also, there was also a lawsuit, an intervention by the DFEH into a private lawsuit, class action for harassment against Riot Games, which the suit was going to settle for $10 million. And the DFEH came in and stopped the suit from settling and said that the women could be owed up to $400 million. So at minimum, that should have put Activision on alert that this was not a routine matter. That's not their company, though, is it? It's a different company. It isn't their company, but it's a direct competitor in the video game market in Southern California, and there's a confidential witness statement in the complaint saying that an earlier article about sexism at Riot Games that came out was huge news at Activision. Everybody was talking about it. So it's a reasonable inference that people at Activision would be concerned about this. This isn't just a random allegation about a different company. Cienter is, here, Cienter here is also straightforward. There's no dispute that Kotick was aware of the investigations. The defendants do not dispute this, and the Wall Street Journal reported that he was. In addition, he knew about many sexual harassment incidents, and he was a hands-on manager. He was heavily involved in employment issues at the company. And confidential witnesses say he was aware of the change in human resources. Further, an internal response like Activision mounted towards this while reassuring investors, strongly supports Cienter under this court's ruling in Shulaman v. Arena Pharmaceutical. Also on loss causation, which the district court did not rule on, but the defendants challenged, but the defendants challenged in their brief. At the pleading stage, plaintiffs need to just allege a causal connection between the fraud and the loss, and here are the upheaval at Activision and the game cancellations that preceded the stock drop. Counsel, what was the stock drop, and when did the stock drop occur? Well, the first stock drop was on July 27th, and that happened after the DFEH complaint came out. How long after the complaint came out? It was a week. And what was the amount of the, what was the value of the stock before, and what was the value of the stock a week later? It went from 91 to 84, and it occurred after Activision denied that, denied the allegations, but then there was a huge amount of employee unrest, there was a walkout, 2,000 people trying to find a letter about harassment at Activision. And did that have to do with the stock drop? Well, it happened, those events proceeded directly before the stock drop, and that showed that Activision's denial of the complaint, of the complaint's allegations, were not going to quell unrest among employees, and it was going to damage Activision. Doesn't that mean that the employee unrest caused the stock drop, not the, quote, corrective disclosure? Usually corrective disclosures in these kind of suits, you know, they reveal that something's happened and the stock drops the next day. This says they revealed what everybody already knew, that you got a bunch of bums running this company, and it was just that the employees just showed how bad it was, and that's what caused the stock drop. Wouldn't that be a more plausible? Well, the analyst reports connect the complaints direct, the revelation of the DFEH investigation directly to the drop, and there's precedent in this circuit, the Gilead case, where even if an event happens earlier, where in that case there was a warning letter that the, that didn't cause an immediate drop, but then when the sales impact of the warning letter came out, that caused the drop, and that was, and that was considered sufficient, a sufficient causal connection for loss causation. If there's no more questions, I'd like to reserve the rest of my time. All right. Thank you, counsel. Thank you. Good morning. May it please the court. I'm Kevin Muck, counsel for the defendants and the appellees in this case. I want to start with what this case is about and what it isn't about. Unlike many 10B cases that come before this court, the issues here are fairly discreet. They're a very narrow set of issues. Plaintiffs are challenging just two statements in Activision's legal proceeding statements from November of 2018 through May of 2021, and plaintiffs are asserting an omissions claim. And I think it's important to go back and look at the complaint and see exactly what it is that the plaintiffs are alleging was omitted and why it's actionable. And I would refer the court to paragraphs 288 and 289 of the plaintiff's complaint, pages 97 and 98 of the excerpts of record. And in 289, after having recited the two sentences that the plaintiffs purport to challenge, plaintiffs allege that the statements were misleading because they failed to disclose that the DFEH and EEOC investigations were not routine, that they hadn't arisen in the ordinary course of business, that they weren't significant, and were not expected to have a material adverse effect on Activision's business. That's plaintiff's allegation. Plaintiff's counsel talked about the routine aspect of that statement. That's not sufficient. And I know why plaintiffs want to focus on routine. They believe that that's their best argument as to why this statement was allegedly misleading. I don't believe that they have alleged, for the reasons that I believe Judge Boggs noted in his questions, I don't believe they've adequately alleged that these investigations were non-routine. But putting that aside, simply alleging that an investigation wasn't routine doesn't give rise to a cause of action under Section 10B. It's hornbook law that under Section 10B, an omission must be material. And the problem that the plaintiffs have is that they don't plead that at any point during the relevant period of time, from November of 2018, when the first challenge statement was made, until May of 2021, when the last challenge statement was made. They don't plead any facts to show that those investigations were understood to be, or actually were, material. Well, opposing counsel states that the fact that they, the mechanisms by which they were made, are unusual to the point that we can draw an inference that the defendants knew, or knew or should have known, that these were not routine. That's right. What's your response to that? Is that inference appropriate from what's been plead? Absolutely not, Your Honor. It's not appropriate to draw that inference. The plaintiffs certainly do make that allegation, but they don't support it with any facts to suggest, A, that that's the case. There's not one instance, not one, in which the plaintiffs have cited an example where a company, faced with one of these rarely used mechanisms, actually ended up with a material adverse effect on its business. There's no facts at all. The plaintiffs say nothing about how... Well, that's a different issue, whether or not there was a material adverse effect on the business, and whether or not we can draw an inference that they were aware that this wasn't routine because of the mechanism with which the investigation was initiated. Those are two different issues. Well, I think that they're related issues, though, Your Honor, because, again, even if something isn't routine, if it's not material, it's not actionable under Section 10B. But getting back... Well, they're saying it's material because it was so out of the ordinary, and that in and of itself, whether or not it had an effect on the business or not, the fact that these two different agencies initiated investigations in a way that's very rare supports an inference that the defendant knew or should have known that this was not routine, setting aside what the effect was on the business. Well, Your Honor, I agree that they use that argument to show routine. I don't believe that they've made that argument that that shows it was material, and that's the ultimate issue. That's what they need to ultimately prove. Moreover, they need to come forward with facts. It's not enough to... From your point of view, as you're putting the law, let's say, if even a lawyer, let alone someone on the board, said, good heavens, the last six times somebody brought a defender's or a director's complaint, it blew up the company, or they fired the CEO, or you better watch out. That would come a lot closer to making a case from your point of view. Absolutely right, Your Honor, and none of those facts are alleged in the complaint. There's not one fact alleged about any of these directors' complaints or commissioners' charges, and under the Reform Act, the plaintiffs can't simply make that conclusion without supporting facts and ask the court to accept it as true. The plaintiffs spent a lot of time talking about this court's recent decision in the Forescout case. Forescout is actually instructive on this point, because what Forescout said was that there's a difference between a Reform Act case, where the plaintiffs need to plead detailed facts to support their allegations, and the ordinary case under Iqbal and Twombly, where all the plaintiffs need to do is raise a plausible inference that what they're saying is accurate. In Forescout, the court actually rejected claims where the plaintiffs didn't go beyond that plausible standard and support their allegations with facts. I clearly think that that's the case here with respect to the rarity of the investigations, but to Judge Boggs' question, there's no allegation at all that anybody at Activision knew or understood that there was any significance whatsoever associated with respect to the mechanisms that were used to commence these investigations. So that goes to scienter, though, more than falsity. It does, Your Honor, although I think that it also is arguably relevant to the question of materiality and whether the investigations were expected to have a material adverse effect on the company. But it does go to scienter, and I want to focus on scienter, because I think that there are a number of instances in which, again, this case is very narrow in a way that is probably different from most. Let me just break in and say narrow. Am I right that the question of whether this company was being run by a bunch of bums is completely different than the question of what they said in the 10b-5, because certainly a great deal of their briefing makes a very good case that a lot of bad things are going on at this company? That's correct, Your Honor. And let me be clear. Activision and Mr. Kotick, CEO of Activision, consistently conveyed that they viewed the allegations of misconduct as serious, unacceptable, and that even one instance of misconduct is not acceptable, was inconsistent. But you're absolutely right, Your Honor. This is not a labor or employment case. This is a securities fraud case. And to plead securities fraud under the Reform Act, what the plaintiffs need to do is to provide particularized facts, contemporaneous facts, to show, and let's focus on scienter for a moment, to show why the defendants knew or deliberately disregarded that the statements that they made were materially false at the time they were made. And one of the ways in which this case is narrow is that the plaintiffs have now conceded that three of the four individual defendants aren't liable under Section 10b. That the plaintiffs didn't plead scienter as to the chairman of the board or the two individuals who served as chief financial officer during the relevant time period. That means that there is one individual defendant and one individual defendant only, Mr. Kotick, the CEO. So the entire case hinges on whether the plaintiffs can identify specific facts showing that at time these challenge statements were made, Mr. Kotick personally either knew or deliberately disregarded that the investigations were non-routine, significant, and expected to have a material adverse effect on the company. And let me just pause for a moment there. The reason why the entire case comes down to Mr. Kotick is because the plaintiffs don't dispute that to show activisions scienter, the plaintiffs need to show that one of the individual defendants acted with scienter. So because they've now conceded that three of the four individual defendants didn't have scienter, the only way of showing that activision is liable is to show that Mr. Kotick acted with scienter. And as I said, they don't do that. And I think the clearest example of that is that when you look at what the third amended complaint alleges with respect to what Mr. Kotick was told about the investigations at various times, there's virtually nothing. The closest that the plaintiffs come, and we heard it here this morning, was that as a member of the board, Mr. Kotick would have been aware of these rarely used mechanisms, but they admit that they haven't pled knowledge. Mr. Plaintiff's counsel just admitted in his comments a few moments ago that he doesn't plead specifically that Mr. Kotick was aware of these rarely used mechanisms. So even if one were to assume that the existence of these rarely used mechanisms was somehow in and of itself materially incompatible with the legal proceeding statements, the fact that the plaintiffs allege that they haven't, or that they admit they haven't alleged that Mr. Kotick was aware of that is fatal to their claims. It means scienter is lacking as to him, and scienter is also lacking as to the company as a result. I would suggest that as we cited in our papers, this court's decision in the lending club case is instructive specifically on this issue. In that case, that was a case in which the plaintiffs alleged that lending club had failed to disclose information about an FTC investigation, and specifically that the FTC was investigating allegedly deceptive lending practices by the company. The district court held that the plaintiffs had not adequately alleged that the CFO had failed, that the CEO and other officers were familiar with the details of the investigation, or that they knew that information about the investigation was materially inconsistent with what the company said. This court affirmed on that basis, and I think that while the statements in lending club are slightly different from the statements in this case, the scienter analysis is really right on point and confirms why as to Mr. Kodik and Activision plaintiffs haven't adequately alleged a strong inference of scienter. That's the other point that I would like to stress is we're talking about a uniquely challenging pleading standard when it comes to scienter. The PSLRA, the reform act, generally imposes heightened requirements, but the requirements as to scienter are especially stringent. They need to plead facts supporting a strong inference of scienter, and I would submit that they haven't pled facts that would even suggest negligence in this case, much less either knowledge of falsity or deliberate recklessness, which is tantamount to intent by turning a blind eye to the truth. I want to just turn briefly to the other issue that came up, and that is loss causation. The plaintiff's counsel has acknowledged that as a result of the disclosure of the investigations with the DFEH lawsuit on July 20th, 2021, the stock price did not move. The stock price moved a week later, but by plaintiff's admission, it moved in response to something else. It moved in response to employee unrest and concerns that were raised by employees. The law is clear that for loss causation, plaintiff needs to plead that disclosure of the specific fact that was allegedly misstated or omitted caused the stock price to drop. Plaintiffs here allege that there was one fact and one fact alone that rendered these statements misleading. That was the failure to disclose the investigations. That fact was disclosed by July 20th of 2021. The fact that it didn't, the stock didn't move in response to that means that loss causation is a separate basis on which this court can affirm the judgment below. Unless the court has other questions, thank you very much for your time. Thank you, counsel. Rebuttal. Yeah. Your honors. It's notable that the defense counsel would start by discussing materiality, given that the standard is so high to get a case dismissed on the pleadings for materiality. As this court held in alphabet, the inquiry into materiality is fact-specific, and resolving materiality as a matter of law is generally appropriate only if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ. So this court should not affirm dismissal based on the idea these statements are not material. Further, while there's a lot of discussion about the mechanism, the mechanisms, I think, are a very powerful allegation. This case does not need to be decided on whether the mechanisms by themselves make it material because of the extensive allegations about the endemic harassment of Activision and the nature of Activision as a company that was reliant on its workers. Counselor, doesn't that go to my colloquial statement that goes much more to whether the company was acting badly about its employees than about whether they lied about this statement? Despite your colleagues standing up for his client, to me, you make a great case about how bad many of their practices were, but that's not the issue, is it? It isn't. And I agree with your honor. This very easily could not have been a securities case because Activision didn't have to make this disclosure. We don't argue that Activision had to just disclose these investigations. What we argue is that they specifically reassured investors over and over again that all investigations that they were a party to, that were not listed, the way that the allegation is structured, there's a list. And then it says, in addition, for example, in the 2019 10-K. And that's when they committed securities fraud. And based on a reasonable investor, would be shocked that they were subject to these investigations. And just a final word on Sienta. Well, the Sienta standard is not a normal notion of standard. It is still, if the inference is equal to the non-couple inference, then the plaintiff still can move forward on Sienta. So therefore, I think there's clearly enough pled for Mr. Kotick. All right, thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: Boggs, RAWLINSON, THOMAS